David Campbell, Special J.,
delivered the opinion of the Court.
On the 8th day of July, 1865, James A. Thomas exhibited to the Hon. A. McClain, a bill against William Cullom and J. A. Johnson, and obtained from His Honor a fiat for an injunction, to enjoin an execution in favor of William Cullom against him, for the *354 sum of thirty-five hundred and thirty-seven dollars, issued from the office of the Clerk of the Circuit Court of Smith County, upon a judgment obtained in that Court by Cullom against him, at its March Term, 1865.
The fiat of His Honor directed the Clerk and Master of the Chancery Court of Smith County— upon the complainant entering into bond with securities, in the sum of seven thousand and seventy dollars, conditioned to pay the judgment for thirty-five hundred and thirty-seven dollars, with interest, damages,, and costs, in case the injunction should be dissolved, and also to pay such damages as might be sustained by the wrongful suing out of such injunction — to issue the writ of injunction, restraining the collection of the judgment, according to the prayer of the bill.
The bill, with this fiat thereon, was, on the 13th day of July, 1865, presented to the Clerk and Master of the Chancery Court, at his office, in Carthage; and James A. Thomas having given bond, with James Thomas, S. Ward, Solomon Thomas, and E. M. Orange, as sureties for the costs of the suit, the Clerk and Master on that day, filed the bill. On the same day, the Clerk and Master took from James A. Thomas, an injunction bond on the penalty, and, with the condition prescribed by the fiat of the Circuit Judge, with S. Ward, Matthew Getros, Solomon Thomas, and E. M. Orange, as sureties thereto.
This bond bears date on the 11th day of July, 1865. The injunction was issued on the 17th, and served on the 19th of July, 1865. On the 15th day of August, *355 1865, S. Ward filed his petition in the case, seeking to be relieved from his obligation as one of the sureties to the injunction bond, upon the ground that he had signed his name thereto, upon the condition that he was not to be bound thereby, unless one William B. Whitley, and other good and solvent persons, should also put their names thereto, as sureties; and that the bond was, without this condition having been complied with, delivered to the Clerk and Master.
The cause was, on the 21st day of August, 1865, heard, on bill, demurrer, and answer, and a decree therein rendered, dismissing the complainant’s bill for want of equity. And thereupon, the Court, upon motion, gave judgment against James A. Thomas, S: Ward, Solomon Thomas, and F. M. Orange, as his-sureties in the injunction bond, in the sum of thirty-six hundred and ninety-nine dollars and fifty-five cents,, the amount of the principal, interest, and costs of the' judgment so enjoined. From this decree, S. Ward alone appealed in error to this Court, and seeks a reversal of the judgment against him, as one of the sureties in the injunction bond.
His petition to be released from the obligation of the bond, appears to have been heard in connection with the original cause, and witnesses to have been examined in open Court, touching the matters therein alleged as the grounds upon which a release was sought. Their evidence is embodied in a bill of exceptions, made a part of the record. The testimony of the first one of the witnesses, Edward Upton, so examined, is, in substance, that he was at the store *356 of Sterling Ward, at New Middleton, on tlie day on which Ward signed the bond; that O. F. Thomas, who is the father of James A. Thomas, and who was acting as agent for James A., took him aside, before the bond was signed, and asked' him to become one of the sureties thereto, telling him it was only for costs, and •Sterling Ward, William B. Whitley, and other good men, would sign it; that he refused to sign it, and then they went into the store of Ward; that 0. F. Thomas and Ward stepped into another room, and, on their return into the room where he had .remained, the name of Ward was signed to the bond; that he did not hear the conversation, if any, between C. F. Thomas and Ward, before the latter signed the, bond; that, on their return into the room with the bond, and Ward’s name to it, Ward remarked, that if he had known the witness and J. W. Johnson, who were .present, would not sign the bond, he would not have done so; that 0. F. Thomas said that W. B. Whitley, and other good men, would sign it; and that Ward then said, if Whitley and other good men would sign it, his name might remain on it.
William J. Johnson, the second of these witnesses, says, that the day before that on which Ward signed the bond, he had a conversation with Ward, in which Ward told him, if. he and Whitley, and other good men, would sign the bond, he would — otherwise, he would not; that he, on the day on which Ward signed the bond, was in the store of Ward, and 0. F. Thomas and Ward stepped into an adjoining room with the bond, and, on their return to the store-room, the name *357 of Ward had heen signed to the bond; that he then refused to ' sign the bond, and Ward said, if he had known witness, and Upton would not sign the bond, he would not have signed it; and that then, J. A. Johnson, who is a party to the hill, asked Ward, if William B. Whitley and other good men would sign it, would he be willing to let his name remain on the bond, and Ward said, “he would,” — otherwise, he was not willing.
Both of these witnesses prove that William B. Whitley owns a valuable tract of land, and other good property; and that Matthew Getros, Solomon Thomas and E. M. Orange have very little property.
The testimony of the third one of these witnesses, William B. Whitley, is that C. E. Thomas applied to him on behalf of his son, James A. Thomas, to sign the bond, which he refused to do; and that Matthew Getros, Solomon Thomas and F. M. Orange had but little property.
There is no proof that C. E. Thomas, in the part he took in obtaining the signature of Ward to this bond, acted by the direction of, or for the Clerk and Master. Indeed, the latter is not shown ever to have seen or heard of the bond in question, until the same was accepted by him, and filed in his office as a part of the record in the cause. The rules of law governing this case, are well settled. Delivery is, says Kent, 4th vol., 454, “another incident, essential to the due execution of ' a deed, for it takes effect only from the delivery. The deed may be delivered *358 to the party himself to whom it is made, or hy any other person authorized by him to receive it. It may he delivered to a stranger as an escrow, which means a conditional delivery to the stranger, to he kept hy him until certain conditions he performed, and then he delivered over to the grantee.” The general rule here laid down, as to the nature of an escrow, has been uniformly recognized, and acted upon hy this Court in all its decisions upon the same question.
Thus, this Court, in the case of Evans vs. Gibbs, 6 Hum., 406, 407, said, “as to the first point, the sealing and signature of all instruments not being denied, it is incumbent on him who alleges it to be an escrow merely, and not his deed, to prove affirmatively, not that the principal promised something further should he done, hy way of inducement to his execution of the instrument, but that performance of each- further act, was the condition upon which he was to become hound, or the instrument to he delivered as his act and deed.”
Then the Court held that the proof did not show that Marr had signed and sealed the paper, upon the condition that he was not to be hound thereby, or the same was not to he delivered as his act and deed, unless Debrel should also sign and seal it, and therefore that Marr was hound. The proof was, that Gihhs, the principal, thought that Marr manifested some hesitation to sign and seal the hill single, upon which he observed to him that he would also procure one Dibrel, his brother-in-law,- who was worth *359 some three thousand dollars, to execute the same, and if it came to the worst, he had funds under his control, or within his reach, to pay the bill. Marr executed the instrument; Dibrell not being at hand, G-ibbs delivered the bill to the plaintiff.
In the case of Carrick vs. French, et al., 7 Hum., this Court said: “It is, however, certain that the complainant did not deliver the\ bill single with his signature, upon the condition that it should be signed by either Henry Simpson or Jenkins, and that not being delivered upon this condition, it is no escrow, and cannot be cancelled.”
In that case the facts were, that William M. French had bought at public sale, property to the amount of one thousand and fifty-four dollars; that the executors handed him a. note, prepared for the signature of six persons, for the purpose of getting obligors thereto, for the payment of that sum in twelve months; that he signed it himself; that as attorney in fact, he signed the names of Hugh L. French and Benjamin C. Thomas; and that he then presented it to the complainant for his signature. When the latter went to sign- it, French told him to leave a vacant seal between Benjamin Thomas’ signature and his own, as Francis A. Henry would sign his name between them, and that he would also get William Simpson and John Jenkins to sign it. Garrick then signed it. The witnesses proved that he did not believe that Carrick would have signed it, had he not told him that Henry, Simpson and Jenkins would sign it.
*360 These facts were held by the Court, not to show that the bill single was signed and sealed and delivered, upon the condition that the signature of the other persons named were also to be signed thereto.
In the case of Perry vs. Patterson, 5 Hum., 133, the Court decided that as the bill single was signed and delivered to the principal obligor by a surety, upon ‘the condition that another should become his co-surety thereto, it was delivered as an escrow, and as the conditions had not been performed, the surety was not bound thereby. When the bill single was presented by the principal, W. Perry, to the surety, Simpson Perry, for his signature, he expressly refused to sign it until he was informed that Francis S. Perry was to do so likewise; he then agreed to sign it upon that condition, and did so, placing the note thus signed in the hands of William Perry to procure the signature of Francis S. Perry, before it was to he delivered to Patterson. The case of Quarles vs. the Governor, 10 Hum., 122, 127, was this: Quarles signed, with others, a bond as surety for one Scanland, as Sheriff. When he did so, the bond was in the hands of the Clerk, and the Court was open, though it 'does not appear that the Justices composing the Court were on the bench. Quarles stated at the time of affixing his signature to the bond, that the bond was not strong enough, that Scanland must get other names on it, that he would not be bound with those who were on the bond before him. The bond was not acknowledged by Quarles, on or before the Court, and there is no direct and positive evidence that he ever acknowledged it be *361 fore the Clerk. It was, however, left in the Clerk’s hands by whoever it was presented' to the Court, which accepted it, and ordered it to be recorded. The Court in this case decided two things : 1st, That parol proof was admissible to show that the bond was signed and sealed by Quarles and left with the Clerk, upon the condition that the same was not to be delivered to the Court, as the bond of Quarles, unless Scanland obtained other good sureties thereto. And 2d, That the proof shows the Clerk had delivered the bond to the Court without Scanland haying complied with this condition. It consequently held that the bond was not obligatory upon Quarles. This case differs from that of Bryan vs. Goss and sureties, in the fact that in this case the record of the County Court only stated that the bond was approved and ordered to be recorded, while the record in that of Bryan vs. Goss,-asserts that Goss had been elected Sheriff of Tipton County, and came into open Court and entered into bond and security, as the law requires, which bond was recorded in a book kept by the Clerk of the Court for that purpose. The Act of 1V77, ch. 8, sec. 2, requires that a Sheriff shall enter into bond, with two or more good securities, in the penalty of twelve thousand, five hundred dollars, payable to the Governor and his successors; which bond every County Court is required and empowered to demand and take, and cause to be acknowledged before them in open Court, and recorded; and the entry upon the minutes of the County Court was that Goss came into open Court and entered into bond and security as the law required. This of necessity, embraces every *362 thing, and we ’must presume that the record speaks the truth. If it does, then the bond has been properly executed and acknowledged. In the case of Howard et als. vs. the Bank of Tennessee, 5 Hum., 53, it was decided that a forthcoming bond delivered to a Clerk and Master of a Chancery Court in the street, was a valid bond and obligatory upon the parties. Then the state of facts was that the Clerk had taken the bond in the streets. The bond was handed to the Clerk by one of the defendants, and the Clerk looked at it and knew the signatures to be those of the obligors. The sureties were not present at any time before the Clerk.
This case settles that it is not esssential to the validity of such a bond, for it to have been delivered to the Clerk in his office, or for all the signers to have been present at its delivery, or for them to have acknowledged it before him at any time. In the case under consideration, Ward is proved to have signed and delivered the bond, and there is a total absence of any testimony of his having, at the time of signing and delivering it to Thomas, done so upon any condition whatever. Indeed, there is no evidence of what took place between him and Thomas at the time of such signing and- delivery of it.
Afterwards, and when on their return into the storeroom, on Johnson’s refusal to sign the bond, he declares that “if he had known that Johnson and Upton would not sign it, he would not have done so,” But, he does not state that he had signed it upon the condition that Johnson and Upton, or any other per *363 sons, would sign it. In the course of the conversation which then takes place, C. F. Thomas is proven to have said that Upton and other good men would sign the bond, and Ward to have remarked, that then he was willing his name should remain on it.
It is also proven that J. 'A. Johnson asked him the .question, if W. B. Whitley and other good men would sign the bond, would he be willing his name should remain? and Ward to have replied, that he would — otherwise, he would not. But he does not even then declare that C. F. Thomas must obtain the signatures of W. B. Whitley, or other good men, as the condition upon which the same was to be delivered to the Clerk and Master, and to become obligatory upon him.
The result of this evidence seems to be, that C. F. Thomas gave Ward some assurances of obtaining the signatures of W. B. Whitley- and other good men to the bond, as inducements to satisfy his mind with his act of having signed and delivered the bond; and that Ward, satisfied by those assurances, let Thomas retain the bond, as the act and deed of Ward, and carry it off with him. It fails to establish, to our satisfaction, that Ward made the obtaining of the signatures of Whitley and others the express condition on which he signed and delivered the bond, or on which he permitted his name to remain on it, and Thomas to carry it away; and if the case were one between individuals, as to the obligatory force of this bond as an individual bond, we think the evidence insufficient to show that it was delivered as an escrow. But the *364 case is that of the validity of an official bond; in which character of cases the evidence to set them aside, or to release parties from them, upon the ground of their having been delivered as, escrows, ought to he direct, clear, full and satisfactory.
The Code requires the Clerks and Masters of the Chancery Courts, as it does those of all other Courts, to keep their offices at the county seats, and imposes upon them the duty of executing most of the orders and decrees of their Courts made during term time, and also the orders of the Chancellor and Judges at Chambers; and among other duties, that of taking injunction bonds. In the discharge of most of these duties, they act as judicial officers, and their acts are judicial acts. Such is peculiarly the case of their acts in the taking of injunction bonds, under the fiats of Chancellors and Judges, and the provisions of the Code.
These bonds become parts of the record, and furnish the foundation for judgment against the parties thereto, and in many cases the rights of the defendants rests wholly upon them. In the taking of such bonds, all essential parts of the duty of the Clerk and Master is to pass upon and decide the question of the sufficiency of the sureties thereto, for it is, in every case, incumbent upon them to take good and sufficient security. It is another essential part of their duty, to satisfy themselves that, the men whose signatures appear to any injunction bond tendered to them in any .case, are their genuine signatures, and were affixed thereto under such circumstances as will make the *365 instrument obligatory upon them. They act for the suitors, and in his absence, as the organ of the law; and the protection of the rights and interests of the suitors, are confided to their faithfulness, caution and intelligence. The legal and logical sequence of their position, powers and duties, in the matter of the taking of injunction bonds, would seem to be, that, when, in any particular case, a Clerk and Master had accepted such a bond, and thus judicially passed upon the questions of the sufficiency of the sureties thereto, of the genuineness of their signatures, and of such signatures having been affixed under such circumstances as to be obligatory upon them, the proof to overturn his .action, by showing the signatures of any of the parties were put thereto as an escrow, should be as clear, satisfactory and demonstrative as that required to set aside a decree or judgment of a Court of Record, upon the ground of fraud.
The objects of the provisions of the Code as to the powers and duties of Clerks and Masters, in the taking of injunction bonds, seems to us to require this force and effect, to be given to the action of a Clerk and Master in the acceptance of an injunction bond, because, without such force and effect shall be given thereto, the protection intended to be afforded to the rights and interests of suitors, would, in many cases, not be secured to them.
There is not, in this case, clear, satisfactory and demonstrative proof of this bond having been signed and delivered by Ward to C. E. Thomas, upon the condition that the same was not to be delivered to *366 tbe Clerk and Master, as the bond of Ward, unless Thomas should procure William B. Whitley, and other good men, to become sureties thereto, and as, without proof of that character, of its being signed and delivered to Thomas, as upon that express condition, we think the action of the Clerk and Master in taking the bond cannot be overturned, and Ward released therefrom; he was not entitled to the relief sought by his petition.
The judgment of the Court below against him is correct, and the same is affirmed.